IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| WESLEY DAVIDSON, | : | Case No. 1:15-cv-00528 |
| Plaintiff, | : | Judge Susan J. Dlott |
| v. | : | **ORDER RULING ON** |
| | : | **MOTIONS *IN LIMINE*** |
| CSX TRANSPORTATION, INC., | : | |
| Defendant. | : | |

Before the Court are six motions *in limine* filed by Defendant, CSX Transportation, Inc. The Court will consider each motion in turn.

I.     **STANDARD OF LAW**

District courts have authority to adjudicate motions *in limine* pursuant to their "inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Courts should exclude evidence *in limine* "only when evidence is clearly inadmissible on **all** potential grounds." *Gresh v. Waste Servs. Of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010) (quotation and citations omitted) (emphasis added). The Sixth Circuit has stated that the "better practice" is to address questions regarding the admissibility of broad categories of evidence "as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). "[A] court is almost always better situated during the actual trial to assess the value and utility of evidence." *Owner-Operator Indep. Drivers Ass'n v. Comerica Bank*, No. 05-CV-0056, 2011 WL 4625359, at *1 (S.D. Ohio Oct. 3, 2011) (quotation and citation omitted). Denial of a motion *in limine*, however, does not necessarily mean that "all evidence contemplated by the

1

motion" will be admissible at trial. *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

## II. DEFENDANT, CSX TRANSPORTATION, INC.'S MOTIONS *IN LIMINE*

### A. Motion to Exclude References to Plaintiff as a Good or Safe Employee (Docs. 26, 39)

Defendant asks the Court to enter an order that would preclude any character evidence that the Plaintiff was a "good" or "safe" employee. (Doc. 26 at PageID 97.) Plaintiff responds that he does not intend to offer any character evidence *per se*, and, to this extent, does not oppose the Motion. However, counsel urges that the "nature of railroad work often times makes the fact that an employee is considered a 'good employee' highly relevant." (Doc. 39 at PageID 219.) Continuing:

> For example, in this case, the railroad movement in which the plaintiff was injured was a "shoving" move. Basically, the locomotive engine is pushing many rail cars down the track. The engineer is working blind. He can not see where they are going. He does not know where the lead car is. Instead, an employee, in this case Mr. Davidson, must station himself on the leading car of the movement and "control the movement" through radio communications. Obviously, the fact that Mr. Davidson is a good employee makes a world of difference to his engineer who is relying upon him for the safety of the movement.

(*Id.*)

The Court believes that Fed. R. Evid. 404(a)(1) requires a ruling in Defendant's favor. But out of an abundance of caution, Defendant's Motion is **TAKEN UNDER ADVISEMENT** such that the Court will rule at trial on a question-by-question basis. Plaintiff's counsel is cautioned that his opening statement to the jury may not contain any reference to whether Plaintiff was at the time—or currently is—a "good" or "safe" employee.

### B. Motion Regarding Plaintiff's "Only Day in Court" (Docs. 27, 44)

Defendant asks the Court to enter an order that precludes Plaintiff's counsel "from engaging in commentary and/or argument before the jury or eliciting testimony, or otherwise

offering evidence, directly or indirectly, on the fact that this case is Plaintiff's 'only day in Court' or Plaintiff's 'only remedy.'" (Doc. 27 at PageID 101.) Plaintiff does not object to this Motion, but makes the following observation:

> As a practical matter, in all FELA cases, a tension exists concerning workers' compensation cases. The defendant is concerned, quite understandably, that a jury might think that the mere fact that a railroad worker got hurt on the job entitles them to recovery, as is the case in workers' compensation. On the other hand, the plaintiff in FELA cases is concerned that the jury may wrongfully conclude that he recovered workers' compensation benefits and his FELA recovery is an addition to that. It seems to the plaintiff that instead of going to great lengths to conceal these facts from the jury, a better approach would be to confront the issue head on in the form of a simple instruction to the jury at the outset of the case.

(Doc. 44 at PageID 309–10.) Upon consideration, the Court believes such an instruction would be ill-advised. *See Schmitz v. Canadian Pacific Ry. Co.*, 454 F.3d 678, 685 (7th Cir. 2006). Defendant's Motion is **GRANTED**.

### C. Omnibus Motion (Docs. 28, 38)

Defendant asks the Court to enter an order that precludes Plaintiff from introducing evidence regarding:

1) The history or Congressional intent in enacting the Federal Employers' Liability Act: Plaintiff "agrees" to this Motion (Doc. 38 at PageID 216 ¶ 1), and it is therefore **GRANTED**.

2) Plaintiff's gross wage loss: Plaintiff concurs that the proper measure of lost wages is after-tax loss, but indicates that "computation of after tax loss necessarily includes at least a mention of the gross wages." (*Id.* ¶ 2.) The Court disagrees. Defendant's Motion is **GRANTED**, but, to avoid jury confusion, the Court encourages the parties to stipulate to the amount of after-tax lost wages with respect to Plaintiff's first and second shoulder surgeries.

3

3) Any financial hardship experienced by Plaintiff or his family members, or loss of consortium experienced by Plaintiff's family members: Plaintiff does not object to this Motion (*id.* ¶ 3), and it is therefore **GRANTED**.

4) Unrelated accidents or conditions or the alleged "dangerousness" or "unsafe" nature of the railroad: Plaintiff does not object to this Motion (*id.* ¶ 4), and it is therefore **GRANTED**.

5) Reference to this case as a workers' compensation case or as Plaintiff's sole remedy: This topic is addressed *supra* in Part II.B.

6) Reductions in crew size or leases of rail lines: Plaintiff does not object to this Motion (*id.* at PageID 217 ¶ 6), and it is therefore **GRANTED**.

7) The financial status of CSX Transportation: Plaintiff does not object to this Motion (*id.* ¶ 7), and it is therefore **GRANTED**.

**A. Motion Requesting an Order that Precludes Plaintiff's Counsel from Arguing "But For" Causation to the Jury (Doc. 29)**

Defendant asks the Court to enter an order that precludes Plaintiff's counsel "from arguing or suggesting to the jury that Plaintiff may recover because [Defendant's] negligence was a 'but for' cause of Plaintiff's injury." (Doc. 29 at PageID 107 (citing *CSX Transp., Inc. v. McBride*, 564 U.S. 685 (2011)).) The Court agrees that any such argument or suggestion would be error under Supreme Court precedent.[1] Thus, Defendant's Motion is **GRANTED**.

**B. Motion to Preclude Mention of Future Damages (Docs. 32, 37, 42, 57)**

Defendant asks the Court to enter an order that precludes Plaintiff "from offering evidence, testimony, argument, and conclusions regarding any alleged damages for future lost wages, fringe benefits, and medical costs." (Doc. 32 at PageID 148.) Plaintiff agrees that the

---

[1] For his part, in his Objections to Defendant's Proposed Jury Charges, Plaintiff indicates that "it is not expected that there will be any evidence in this case of 'but for' causation." (Doc. 43 at PageID 307.)

evidence "does not support a claim for future lost wages or impairment of earning capacity," and, to this extent, does not oppose Defendant's Motion. (Doc. 37 at PageID 213; Doc. 42 at PageID 299.) He argues, however, that he has "suffered a permanent [shoulder] injury," and, accordingly, is entitled to recover noneconomic damages therefor. (*Id.*) Hence, in this respect, Plaintiff maintains that Defendant's Motion should be denied. Defendant counters in reply:

> Although Plaintiff's expert testified that Plaintiff will never have "normal" shoulders, the expert also testified that Plaintiff will be fine and should not have any additional problems. Checroun Dep. at 33: 11-33:18. Plaintiff has not provided any testimony or evidence regarding the need for, or possibility of, any future medical treatment, nor has Plaintiff presented any evidence regarding the long term effects of his previous injuries. Further, Plaintiff has not reported that he is currently in pain, and there is no evidence regarding the onset of future pain related to this injury.

(Doc. 57 at PageID 412.)

Matters concerning witness credibility and the weight of the evidence must be reserved to the trier of fact, irrespective of Defendant's attempts to couch them otherwise. Thus, Defendant's Motion is **GRANTED** with respect to evidence regarding future lost wages and fringe benefits, impairment of earning capacity, and future medical costs, but **DENIED** with respect to evidence regarding past, present, or future pain, suffering, and mental anguish in connection with Plaintiff's shoulder injuries.

**C. Motion to Exclude Dr. Anthony Checroun's Opinion as to Causation of Plaintiff's Alleged Injuries (Docs. 34, 41, 58)**

Defendant asks the Court to enter an order that would preclude Dr. Anthony Checroun, Plaintiff's treating physician, from testifying as an expert as to the causation of Plaintiff's shoulder injuries. Dr. Checroun is an orthopaedic surgeon whose specialty is shoulders. (Checroun Dep., Doc. 40-1 at PageID 227 (5:12–14), 260 (38:2).) He diagnosed Plaintiff with a superior labrum anterior posterior ("SLAP") tear in his right shoulder and eventually performed

5

surgery.  (*Id.* at PageID 232 (10:7–10), 234 (12:13–16).)  He later diagnosed Plaintiff with a partial tear of the rotator cuff tendon in his left shoulder and, again, eventually performed surgery.  (*Id.* at PageID 245–46 (23:25–24:1), 247–48 (25:17–26:15).)

Dr. Checroun opined that, in light of the "the mechanism of injury" and his clinical findings, his diagnoses were "secondary to [Plaintiff's] injuries sustained in October of 2014." (*Id.* at PageID 254 (32:14–18).)  He described "the mechanism of injury" as Plaintiff "holding[] some bars looking over" when Plaintiff "supposedly fell and jerked both of his arms upward and backward." (*Id.* at PageID 261–62 (39:22–40:2).)  Dr. Checroun's description, however, differs from Plaintiff's.  Plaintiff testified that, while he was leaning out trying to see around the corner, the cab "kind of fell down" and it "kind of threw me forward."  (Excerpt of Davidson Dep., Doc. 34-1 at PageID 194 (70:1–6).)  And, as it threw him forward, Plaintiff "felt sharp pain in [his] right shoulder."  (*Id.* at PageID 194 (70:6–7).)  Because of this discrepancy, Defendant urges that Dr. Checroun's opinion "linking Plaintiff's shoulder injuries to the incident on October 17, 2014, is based on unsupported speculation and is not tied to the facts of the case."  (Doc. 34 at PageID 187.)  The Court disagrees.

Instructive is *Smith v. Baker*, No. 11-99-GFVT, 2013 WL 1829833 (Feb. 11, 2013), cited by Plaintiff.  There, in a Section 1983 case, the district court reaffirmed the principle that a treating physician's "opinions about causation formed during treatment can be put before a jury but opinions created outside the treating context are prohibited." *Id.* at *1 (citing *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 825 (9th Cir. 2011) (citing *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007))).  The district court also declined to strike the testimony of an expert regarding causation vis-à-vis the plaintiff's ankle injury.  That expert was told that the plaintiff testified he was shoved head first into a car by police who then repeatedly

slammed the door against his leg.  Nevertheless, after review of the medical records, the expert noted that the "exact method" of how the "significant fracture dislocation" occurred was "not known," but he opined that it would have to have been a "traumatic condition." *Id.* at *2.  The trial judge determined that the expert's opinion on causation was sufficiently supported by the record, "however open to impeachment it may be." *Id.*  This Court reaches the same result.  Without question, Dr. Checroun reached his causation opinion in connection with his diagnosis and treatment of Plaintiff and, therefore, his opinion is admissible.  The differences between "the mechanism of injury" that he described and Plaintiff's testimony, however, renders his opinion "open to impeachment."  It will be up to the trier of fact to determine the weight, if any, it deserves.  Thus, Defendant's Motion is **DENIED**.

**IT IS SO ORDERED**.

Dated: _6/9/17_____                    _s/ Susan J. Dlott___
                                       Judge Susan J. Dlott
                                       United States District Court